\_\_\_\_ FILED  \_\_\_\_ ENTERED
\_\_\_\_ LOGGED  \_\_\_\_ RECEIVED

APR 2 7 2010

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE APPLICATION   *
OF CEDAR P. CARLTON FOR RENEWAL    *   Miscellaneous Case No. _____
OF HER MEMBERSHIP IN THE BAR       *
                                   *

**10 MC 0160**

## MEMORANDUM OPINION

On April 28, 2008, Cedar P. Carlton, an attorney who was originally admitted to the bar of this Court on April 4, 2005, submitted an application for renewal of her membership. On her application, she listed as her address 1775 K Street, N.W., Suite 600, Washington, D.C. 20006, the address of the firm by which she is employed, Webster, Fredrickson, Henrichsen, Correia & Puth, PLLC. In response to question 5 concerning circumstances that might prevent her from accepting appointment in a pro bono case, she responded that "[w]hile I continue to practice in the District of Columbia Metropolitan area, and I am employed by a law firm located in Washington, D.C., I personally reside in Cambridge, MA. As a result, there could be times wherein geographically it would be difficult to take on a pro bono case in Maryland."

Upon review of her application, Judge Peter J. Messitte, Chair of the Disciplinary and Admissions Committee, wrote a letter to Ms. Carlton in which he noted that Local Rule 701.1(a) provides that "in order for an attorney to be qualified for admission to the bar of this district, the attorney must be, and continuously remain, a member in good standing of the highest court of any state (or the District of Columbia) *in which the attorney maintains his or her principal law office*, or the Court of Appeals of Maryland." (emphasis added). Judge Messitte went on to note that since she is "not a member of the Maryland bar, this means that you must be a member in good standing of the highest court of the jurisdiction in which you maintain your principal law



office." Because she indicated in her renewal application that she personally resides in Cambridge, Massachusetts and that she spends most of her time working from home or from an office space in Boston, he advised Ms. Carlton that "[i]t does not appear that you are a member of the bar of the Commonwealth of Massachusetts." Judge Messitte then requested that she advise "how her office in Washington, D.C. can be her principal office if she is spending the majority of her time in Massachusetts either at home or in an office in Massachusetts."

In response to Judge Messitte's letter, Ms. Carlton stated that her law firm's Washington, D.C. office is her principal office and that she essentially has a telecommuting arrangement with the firm. She stated that she has worked for the firm since September 2002 but in August of 2007 she relocated to Cambridge, Massachusetts for family reasons, but has continued to work for the Washington, D.C. firm remotely. While physically living in Massachusetts she does not practice in Massachusetts, does not have any clients based in Massachusetts or with claims in Massachusetts, and while she utilized rented office space in downtown Boston during the first year, she only used that office to practice law in the District of Columbia, this Court, and before the United States Court of Federal Claims. As of July 15, 2008, her firm stopped renting the office and thereafter she worked only from her home office in Cambridge.

Ms. Carlton advised that from her home in Cambridge, she accesses a computer in the Washington, D.C. office of the firm that is designated for her use. She is thus able to use the firm's computer network and access all programs used by the firm's attorneys, including the internal firm email and firm time-keeping program. Thus, even though she is physically located in Cambridge, Massachusetts, she works off of a computer and server located in Washington, D.C., and, just as when she physically worked in Washington, D.C., all of her correspondence is sent to the Washington, D.C. address and forwarded to her by the firm's office staff. Clients

communicate with her by calling the firm's Washington, D.C. phone number which forwards those calls to her in Cambridge in the same manner as would be the case at an extension in the District of Columbia office. All of her outgoing client correspondence is sent from the D.C. office, and all court pleadings are also prepared for filing and filed from the District of Columbia office, unless she is filing a pleading electronically which she can do from Cambridge. Finally, she stated that she only meets with clients when she is in Washington, D.C., and that she has traveled there several times over the past year to complete large projects and meet with clients.

Local Rule 701.1 provides a detailed definition of the term "principal law office." It is defined as the "the chief or main office in which an attorney usually devotes a substantial period of his or her time to the practice of law during ordinary business hours in the traditional work week." Six non-exclusive factors are enumerated in making a determination of the principal law office of an attorney:

    i.    The attorney's representations of his or her "principal law office" or "law office" for purposes of malpractice insurance coverage, tax obligations and client security trust fund obligations.

    ii.    The address utilized in pleadings, correspondence with clients, applications for malpractice insurance and bar admissions, advertising, letterhead and other business matters.

    iii.    The location of meetings with clients, conduct of depositions, research and employment of support staff and associates.

    iv.    Location of client files, accounting records, and other business records, library and communication facilities such as telephone and fax service.

    v.    Whether the attorney has other offices, their locations and their relative utilization.

    vi.    The laws under which the law practice is organized, such as the place of incorporation.

In recent years, the concept of a "principal law office" has evolved somewhat as a result of significant advances in technology which provide an attorney with the flexibility to carry out a variety of activities at different locations and under varying circumstances. The term does not necessarily mean continuous physical presence but, at a minimum, it requires some physical presence sufficient to assure accountability of the attorney to clients and the court. Under the circumstances described by Ms. Carlton, there can be no question that for purposes of malpractice insurance coverage, tax obligations and client security trust fund obligations, her office is the office of her employer. In addition, the address utilized in pleadings, correspondence with clients, letterhead and other matters is also the address of her employer, which maintains a substantial physical presence in Washington, D.C. When meetings with clients are required, Ms. Carlton does meet with them in Washington, D.C. Her client files, accounting records and other business records, library and communication facilities such as telephone and fax service are all located in Washington, D.C. although, by virtue of advances in technology, she is able to access them remotely from Cambridge, Massachusetts.

The circumstances of Ms. Carlton are markedly different than those of other lawyers that have come to the attention of the Disciplinary and Admissions Committee of this Court in which there was no physical presence whatsoever, and the address utilized by the attorney was a mere "mail drop" with no intention or expectation of any presence of the attorney within the jurisdiction so as to assure accountability of the lawyer to the court and to clients. The circumstances involving Ms. Carlton are no different than that of any attorney who may telecommute from home, but who maintains a physical presence in the jurisdiction of licensure consistent with the letter of the factors set forth in Rule 701.1(e).

There is a an important public interest in requiring that the attorney be a member in good standing of the highest court of the jurisdiction in which the attorney maintains his or her principal law office. The principal office requirement assures the effective regulation of the conduct of that attorney, including any necessary discipline. Where the principal law office is not located where the attorney is a member of the bar, essential public oversight of the attorney's practice is diminished. *Ramirez v. England*, 320 F. Supp. 2nd 368, 375 (D. Md. 2004).

Taking into consideration all of the circumstances described above, the Disciplinary and Admissions Committee has concluded that Ms. Carlton meets the requirements of Rule 701.1(a) and that her principal law office is in Washington, D.C. in accordance with the letter and spirit of Rule 701.1(e).

Accordingly, the renewal application of Cedar Carlton was approved by the committee on September 11, 2008, for reasons to be set forth in an opinion to be issued at a later date, and this Memorandum Opinion now provides the reasons for approval of her renewal application.

4-26-10
Date

Deborah K. Chasanow
Chief United States District Judge

Peter J. Messitte
Senior United States District Judge
Chair, Disciplinary and Admissions Committee

Roger W. Titus
United States District Judge
Member, Disciplinary and Admissions Committee